UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRYCE MATTHEW MIELBECK,

     Plaintiff,

v.                          Case No.:  2:20-cv-987-JLB-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     Plaintiff Bryce M. Mielbeck filed a Complaint on December 18, 2020.  (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 23).  For the reasons set forth herein, the Undersigned recommends that the decision of the Commissioner be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.

## II.    Procedural History

Plaintiff protectively filed for a period of disability and disability insurance benefits on December 14, 2017, and protectively filed for supplemental security income on November 27, 2017, alleging a disability onset date of January 1, 2014. (Tr. at 10).[1]  Plaintiff's applications were initially denied on June 28, 2018, and again upon reconsideration on October 22, 2018.  (*Id.*).  Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Ryan Johannes on February 27, 2020.  (*Id.* at 39-75).  The ALJ issued an unfavorable decision on April 29, 2020.  (*Id.* at 10-24).  The Appeals Council subsequently denied Plaintiff's request for review on October 28, 2020.  (*Id.* at 1-6).  Plaintiff filed his Complaint in this Court on December 18, 2020.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014.  (Tr. at 13).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2014.  (*Id.*).  At step two, the ALJ found that Plaintiff had the following severe impairment:  "rheumatoid arthritis (20 [C.F.R. §§] 404.1520(c) and 416.920(c))."  (*Id.*).  The ALJ, at step three, determined that Plaintiff "d[id] not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  (*Id.* at 15).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) . . . except he can never climb ladders or scaffolds and never crawl; can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; can occasionally reach above shoulder level; can frequently perform handling and fingering. He must avoid concentrated exposure to extreme cold and hear [sic] or vibration; must avoid all exposure to moving mechanical parts or unprotected heights.

(*Id.* at 16). The ALJ also determined that "[t]he claimant is unable to perform any past relevant work (20 [C.F.R. §§] 404.1565 and 416.965)." (*Id.* at 21).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 404.1569, 404.1569(a), 416.969, and 416.969(a))." (*Id.* at 22). Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform work as a vehicle escort driver (*Dictionary of Occupational Titles* ("DOT")# 919.663-022), a document preparer (DOT# 249.587-018), and an addresser (DOT# 209.587-010). (*Id.*). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of this decision (20 [C.F.R. §§] 404.1520(g) and 416.920(g))." (*Id.* at 24).

## IV.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.       Analysis

On appeal, Plaintiff raises four issues.  As stated by the parties, the issues are:

1.       Whether the ALJ properly accounted in the RFC assessment for the limited range of motion in the Plaintiff's elbows;

2.       Whether the ALJ *de facto* reopened the Plaintiff's prior application and considered all of the relevant evidence from the prior application;

3.       Whether the ALJ performed proper psychiatric review technique analysis; and

4.       Whether the ALJ and the Appeals Council Judges had the constitutional authority to decide the present case.

(Doc. 23 at 10, 18, 24, 35 (original typeface omitted)).  The Undersigned finds it appropriate to address the issues in a more logical order than presented by the parties.

Accordingly, the Undersigned first addresses the parties' fourth issue – whether 42 U.S.C. § 902(a)(3) is unconstitutional and necessitates a rehearing of Plaintiff's case.  Next, the Undersigned considers the parties' first issue – whether the ALJ accounted for Plaintiff's elbow impairment in the RFC determination.  Then, the Undersigned considers the parties' second issue – whether the ALJ *de facto* reopened Plaintiff's prior application.  Thereafter, the Undersigned considers the parties' third issue – whether the ALJ properly completed a psychiatric review technique analysis.

Finally, even though the Undersigned finds that the Commissioner's decision is due to be affirmed, the Undersigned analyzes Plaintiff's request that the Court remand his case with instructions for an immediate award of benefits, (*see* Doc. 23 at 53-54), in the event that the presiding United States District Judge disagrees with the Undersigned's findings and recommendations below.

### A.     Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 23 at 35-38 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).  To that end, Plaintiff impliedly asserts that Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional.  (*See id.* at 36).  For example, Plaintiff argues that, because Commissioner Saul delegated his authority to the ALJ who issued a decision in Plaintiff's case, his claim was adjudicated by an ALJ who "had no lawful authority to do so."  (*See id.* at 36, 38 (citations omitted)).  Plaintiff also asserts that his claim was decided under "a presumptively inaccurate legal standard" because

Commissioner Saul issued regulations under which Plaintiff's application was decided.  (*Id.* at 36).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (*id.* at 38 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* (citation omitted)). Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff. (*See id.* at 39-46 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner raises two arguments in support of this contention.  First, the Commissioner argues that because ALJ Ryan Johannes served under a ratification of his appointment by former Acting Commissioner Nancy Berryhill, there was no connection between ALJ Johannes' decision and the removal provision.  (*See id.* at 41-43 (citations omitted)).  Because Acting Commissioner Berryhill was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), the Commissioner asserts that any potential nexus between the removal provision and the decision in Plaintiff's case was severed.  (*See id.*).  Second, even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, the Commissioner argues that Plaintiff "cannot show that the removal

restriction 'inflict[ed] compensable harm' on him."  (*Id.* at 43-46 (alteration in original) (citing *Collins*, 141 S. Ct. at 1789)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 47-48 (citations omitted)), the *de facto* officer doctrine, (*id.* at 48-49 (citations omitted)), the rule of necessity (*id.* at 49-50 (citations omitted)), and broad prudential considerations, (*id.* at 51-52 (citations omitted)).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction."  *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional.  *Collins*, 141 S. Ct. at 1783.  The Court also distinguished the unconstitutional removal provision in *Collins* from similar appointment provisions, *see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential that an unconstitutional removal provision could "inflict compensable harm." *Id.* at 1788-89. To that point, the *Collins* Court listed examples of how compensable harms might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers. (Doc. 23 at 38 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))). However, despite the parties' agreement, the Undersigned finds that the Court need not determine the constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision. In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not

necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.  Accordingly, the Undersigned assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the ALJ's decision in this case.  (*See* Doc. 23 at 35-38).  On the other hand, the Commissioner has raised many arguments, none of which Plaintiff has responded to, as to why Plaintiff's rehearing request should be denied.  (*See id.* at 38-52).

Here, the Undersigned agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons:  (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed him.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *See Seila L. LLC*, 140 S. Ct. at 2208.  Based on this principle, the Undersigned is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate."  (*See* Doc. 23 at 35-38).  Rather, like the offending provision in *Seila Law*, the Undersigned finds that 42 U.S.C.

§ 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision.  *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on the provision's severability from the remainder of the Act).  Thus, the Undersigned finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," Plaintiff here has not identified how the removal provision at issue caused him compensable harm. *See Collins*, 141 S. Ct. at 1788-89.  The Undersigned has not found any evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff.  In addition, Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill.  Because former Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure protection, any argument that a nexus exists between § 902(a)(3) and a compensable harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency
> decisions that would never have risen to the President's
> notice.  Consider the hundreds of thousands of decisions
> that the [SSA] makes each year.  The SSA has a single head
> with for-cause removal protection; so a betting person might
> wager that the agency's removal provision is next on the
> chopping block . . . [b]ut given the majority's remedial
> analysis, I doubt the mass of SSA decisions—which would
> not concern the President at all—would need to be undone.
> That makes sense. . . .  When an agency decision would not
> capture a President's attention, his removal authority could
> not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the

Undersigned's conclusion that there is no evidence in the instant case to suggest that

a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s

removal provision is unconstitutional, the Undersigned finds that the removal

provision does not necessitate remand or a rehearing of Plaintiff's claim.  *See Seila L.*

*LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at

*5 (holding that remand based on the allegedly unconstitutional nature of 42 U.S.C.

§ 902(a)(3) is unwarranted), *report and recommendation adopted,* 2022 WL 61217; *Perez-*

*Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4

(M.D. Fla. Nov. 23, 2021) (finding that the plaintiff failed to state a claim upon

which relief could be granted because the plaintiff could not establish that the Acting

Commissioner's unconstitutional tenure protection caused compensable harm).

B.   **Whether the ALJ Failed to Account for Plaintiff's Elbow Impairment in the RFC Determination.**

Plaintiff argues that "[t]he ALJ improperly failed to include in the RFC assessment a limitation caused by the limited range of motion in the Plaintiff's elbows." (Doc. 23 at 11 (emphasis omitted)).  In support, Plaintiff summarizes medical records from Dr. Tar, Dr. Rosenberg, and Dr. Wallace, all of which note that Plaintiff's ability to use his right elbow is limited by a restricted range of motion. (*Id.* at 12-13 (citing Tr. at 550, 608, 645, 652, 656, 763)).  Plaintiff also highlights his Function Report statement in which he reported that he "can't straighten out [his] arms to reach." (*Id.* at 12 (citing Tr. at 316)).  Plaintiff asserts that, despite acknowledging evidence in the record related to Plaintiff's limited range of motion in the right elbow, the ALJ failed to include an RFC limitation to account for Plaintiff's elbow impairment. (*Id.* at 13 (citing Tr. at 14, 16, 19)).  Thus, Plaintiff contends that the ALJ erred by failing to incorporate a limitation related to Plaintiff's right elbow in the RFC determination.  (*See id.* at 11-14).

In response, the Commissioner argues that substantial evidence supports that ALJ's RFC determination and Plaintiff failed to prove that his elbow impairment caused further limitations in his functional abilities.  (*See id.* at 14-18).  Specifically, the Commissioner highlights the medical evidence considered by the ALJ and asserts that it provides substantial evidence for the ALJ's RFC determination.  (*See id.* at 15-18 (citing Tr. at 16-21, 455, 529, 532, 536, 539, 549-50, 607, 665, 763, 774)).  The Commissioner also essentially argues that the evidence cited by Plaintiff does not

require remand.  (*See id.* at 17-18 (citations omitted)).  The Commissioner contends that the evidence neither compels additional limitations nor shows that Plaintiff is more limited than found by the ALJ.  (*See id.* (citations omitted)).  In sum, the Commissioner argues that remand is not required because the ALJ, as trier of fact, "thoroughly reviewed Plaintiff's treatment evidence and assessed limitations consistent with that evidence."  (*Id.* at 18).

The RFC is "the most" a plaintiff can do despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. §§ 404.1545(e), 416.945(e).  The assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor."  *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010).  Thus, when the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Upon a review of the ALJ's decision and the records cited therein, the Undersigned finds that substantial evidence supports the ALJ's RFC determination. As for the functional limitations related to Plaintiff's right elbow, Plaintiff essentially contends that the ALJ should have found Plaintiff incapable of reaching in all directions.  (*See* Doc. 23 at 13).  Rather than finding that Plaintiff had a complete inability to reach, the ALJ assessed an RFC that limited Plaintiff to sedentary work

with only occasional reaching above shoulder level and the ability to frequently perform handling and fingering.  (Tr. at 16).  Importantly, in arriving at this RFC, the ALJ specifically (1) considered all evidence of record related to Plaintiff's elbow limitations, (2) addressed the persuasiveness of the medical opinions as required by the pertinent regulations, and (3) properly assessed Plaintiff's subjective complaints. (*See* Tr. at 16-21 (citing Tr. at 52-54, 94-98, 103-07, 118-24, 133-38, 548-54, 601-02, 607-08, 761-64)).

Specifically, the ALJ considered Plaintiff's testimony that he experienced elbow pain, but also that he can shower, dress, and feed himself, that he can lift and carry a gallon of milk, that he can pick things up off the floor, that he cannot reach overhead, and that he can button buttons, tie shoelaces, pick up coins from a counter, write with a pen, turn doorknobs, and use zippers.  (Tr. at 16-17 (citing Tr. at 52-55)).  The ALJ took note of Dr. Tar's 2017 records, which showed that Plaintiff experienced joint stiffness for brief periods in the mornings and tenderness and swelling in the elbows but "was not having significant problems with [rheumatoid arthritis]-related pain."  (*Id.* at 17 (citing Tr. at 604, 607-08)).  Additionally, the ALJ considered Dr. Wallace's 2018 and 2020 medical opinions in which she opined that Plaintiff experienced significant limitations based on his rheumatoid arthritis as early as January 2014.  (Tr. at 18-19 (citing Tr. at 601-02, 761-64)).  However, the ALJ found Dr. Wallace's medical opinions to be not persuasive as they were generally unsupported by and inconsistent with the medical evidence of record and failed to rely on sufficient objective medical testing results.  (*Id.* at 20-21 (citations omitted)).

Notably, Plaintiff does not challenge the ALJ's persuasiveness determination, but even if he had, the Undersigned finds the determination is supported by substantial evidence and complies with the pertinent regulations. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

The ALJ also expressly considered Dr. Rosenburg's findings regarding Plaintiff's elbow limitation by noting that Dr. Rosenburg found a "[d]ecreased range of motion" and "pain with motion in the right elbow." (Tr. at 19 (citing Tr. at 548-54)). The ALJ found Dr. Rosenburg's findings persuasive, but highlighted that Dr. Rosenburg "did not assess[] work-related functional limitations." (*Id.* at 21 (citing Tr. at 548-54)).

Accordingly, the ALJ determined that Plaintiff maintained an RFC to perform sedentary work with only occasional reaching above shoulder level and the ability to frequently perform handling and fingering. (Tr. at 16). Upon review of the medical records cited and considered by the ALJ, the Undersigned finds that substantial evidence supports the ALJ's RFC finding on Plaintiff's elbow impairment. (*See id.* at 16-21 (citing Tr. at 52-54, 548-54, 601-02, 607-08, 761-64)). Moreover, the Undersigned is not persuaded that the ALJ failed to account for any work-related limitations in the RFC related to Plaintiff's elbow impairment. While Plaintiff noted evidence in the record expressly considered and assessed by the ALJ, Plaintiff failed to provide any citations to evidence inconsistent with the ALJ's decision that the ALJ did not consider. (*See* Doc. 23 at 12-14). Thus, the Undersigned finds that the

ALJ's RFC determination is supported by substantial evidence and Plaintiff's case should not be remanded as to this issue.

### C.   Whether the ALJ *De Facto* Reopened Plaintiff's Prior Application.

On October 27, 2015, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") alleging disability beginning August 1, 2014, (the "Prior Application").  (Tr. at 79).  Plaintiff's Prior Application was initially denied on February 19, 2016, and upon reconsideration on May 24, 2016.  (*Id.*).  On September 27, 2017, ALJ Eric Anschuetz issued a decision on Plaintiff's Prior Application finding Plaintiff not disabled, (the "Prior Decision").  (*Id.* at 79-86).

During the February 27, 2020 hearing in this case, Plaintiff's counsel requested that ALJ Johannes reopen the Prior Application "based on the submission of new and material evidence."  (*Id.* at 41).  In the April 29, 2020 decision, ALJ Johannes assessed the new evidence used to support Plaintiff's request for a reopening and determined that it was inconsistent with the evidence of record and, thus, unpersuasive.  (*Id.* at 11 (citing Tr. at 761-62)).  For these reasons, ALJ Johannes denied Plaintiff's request to reopen the Prior Application.  (*Id.*).

Presently, Plaintiff acknowledges that the ALJ expressly stated that the request to reopen was denied, (Doc. 23 at 19 (citing Tr. at 11)), but argues that the ALJ nevertheless *de facto* reopened the Prior Application by re-evaluating the merits of the Prior Decision, (*see id.* at 19-21).  In support of this argument, Plaintiff points out that the ALJ:  (1) marked a portion of the evidence from the Prior Application in the

instant record, (*id.* at 19 (citing Tr. at 90, 456-514)); (2) discussed and assessed

evidence from his Prior Application in the instant decision, (*id.* (citing Tr. at 13-14));

and (3) modified the findings of the Prior Decision by concluding that Plaintiff's past

relevant work was different from the past relevant work in the Prior Decision, (*id.*

(citing Tr. at 21, 84)).

      Plaintiff also argues that because the ALJ *de facto* reopened of the Prior

Application, he committed multiple errors in the decision.  Specifically, Plaintiff

asserts that the ALJ erred by (1) failing to include and assess all the evidence from

the Prior Application and (2) applying the revised rules to his evaluation of the

medical evidence.  (*Id.* at 20 (citations omitted)); *see also* Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18,

2017).

      In response, the Commissioner asserts that "the ALJ did not have the

authority to reopen the prior claim," and, therefore, "he had no authority to *de facto*

reopen the prior application."  (Doc. 23 at 23 (citing 20 C.F.R. § 416.1488)).  The

Commissioner also argues that "even if the ALJ had the authority to reopen the prior

application, his decision shows that he did not expressly or *de facto* reopen

[Plaintiff's] prior application."  (*Id.*).  In support of this argument, the Commissioner

notes that the ALJ based his decision solely on the evidence present in the current

administrative record.  (*Id.* (citing Tr. at 16-21)).  In response to Plaintiff's argument

that the ALJ erred by relying on a portion of the evidence used in Plaintiff's Prior

Application, the Commissioner contends that "the relevant period for Plaintiff's

[current Disability Insurance Benefits ("DIB")] application predate[s] the [relevant period for the Prior Decision], and the ALJ was required to examine the record to determine what evidence, if any, supported Plaintiff's current application for DIB." (*Id.* at 23-24 (citing Tr. at 85-86, 241; 20 C.F.R. § 404.1520(a)(3))).  The Commissioner failed to address Plaintiff's arguments that (1) the ALJ modified the Prior Decision by assessing different past relevant work and (2) if a *de facto* reopening occurred, the ALJ erred.  (*See id.* at 21-24).

The Commissioner may reopen a decision to deny disability benefits at any time if the decision was obtained by fraud or similar fault.  20 C.F.R. §§ 404.988(c), 416.1488.  Similarly, the Commissioner may reopen a decision to deny DIB for good cause shown within four years of the date of the initial determination, 20 C.F.R. § 404.988(b), and may reopen a decision to deny SSI disability payments for good cause shown within two years of the date of the initial determination, 20 C.F.R. § 416.1488(b).  Good cause is defined as those situations where new and material evidence is furnished, a clerical error was made, or the decision was clearly erroneous on its face.  20 C.F.R. §§ 404.989, 416.1489.

Generally, federal courts do not have subject matter jurisdiction to review an ALJ's decision not to reopen a prior administrative decision, absent a colorable constitutional challenge.  *See* 42 U.S.C. § 405(g); *Califano v. Sanders,* 430 U.S. 99, 107-09 (1977); *Wolfe v. Chater,* 86 F.3d 1072, 1078-79 (11th Cir. 1996).  Additionally, the Eleventh Circuit has held that courts have jurisdiction over an ALJ's decision not to reopen a prior decision where there has been a *de facto* reopening of the previous

20

decision. *Cherry v. Heckler,* 760 F.2d 1186, 1189 (11th Cir. 1985).  A *de facto* reopening occurs when a previous administrative decision is "reconsidered on the merits to any extent and at any administrative level."  *Id.*  Nonetheless, "a *de facto* reopening does not occur while the SSA is merely evaluating newly proffered evidence to determine whether to reopen the case."  *Bello v. Comm'r of Soc. Sec.*, 460 F. App'x 837, 841 (11th Cir. 2012).  Further, reopening a prior determination is an "extraordinary measure" and should only be utilized for "specific and substantial reasons" that are set forth in the Social Security Administration's regulations. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1238 (11th Cir. 1983); *see also Passopulos v. Sullivan*, 976 F.2d 642, 647 (11th Cir. 1992).

Here, Plaintiff does not assert that a colorable constitutional issue is present in this case.  (*See* Doc. 23 at 19-21).  Therefore, that exception does not apply.  *See Graham v. Bowen*, 786 F.2d 1113, 1114 (11th Cir. 1986).  Thus, the Undersigned considers only whether the ALJ *de facto* reopened the Prior Application.[2]

The Undersigned finds it appropriate to first identify the time periods relevant to this determination.  Plaintiff alleges that his disability began on January 1, 2014. (Tr. at 10).  To succeed on his December 14, 2017 DIB application, Plaintiff must

---

[2]  The Undersigned is not persuaded by the Commissioner's first argument – that the ALJ "had no authority to *de facto* reopen the prior application," (Doc. 23 at 23) – in light of this Court's prior decision finding that 20 C.F.R. §§ 404.988, 404.989 do not apply to cases in which the ALJ *de facto* reopens prior decisions, *Lacy v. Apfel*, No. 2:97-cv-153-FtM-29D, 2000 WL 33152059, at *4 (M.D. Fla. Sept. 11, 2000), *report and recommendation adopted*, No. 2:97-cv-153-FtM-29DNF, 2000 WL 33277680 (M.D. Fla. Oct. 19, 2000).

prove that he was disabled on or before March 31, 2014, his date last insured.  20 C.F.R. §§ 404.101, 404.130, 404.131; (*see* Tr. at 10).  To succeed on his November 27, 2017 SSI application, Plaintiff must prove that he was disabled at any time from December 2017, the month following the month he applied for SSI, through April 29, 2020, the date of the ALJ's decision.  20 C.F.R. §§ 416.330, 416.335; (*see* Tr. at 24).

Accordingly, the dates primarily relevant to Plaintiff's instant applications are January 1, 2014 through March 31, 2014 and December 1, 2017 through April 29, 2020.  *See* 20 C.F.R. §§ 404.101, 404.130, 404.131, 416.330, 416.335.  Additionally, as mentioned previously, the dates primarily relevant to Plaintiff's Prior Application are October 27, 2015 through September 27, 2017.  *See id.*; (Tr. at 79-86).

As to Plaintiff's first argument – that the ALJ *de facto* reopened the Prior Application by reviewing the Prior Decision and the medical evidence considered in that determination – the Undersigned is not persuaded.  Rather, upon a review of the ALJ's decision, the Undersigned finds that the ALJ merely considered the evidence in the Prior Decision as necessary to (1) determine whether Plaintiff's new evidence was material such that it required a reopening of the Prior Application, (*see* Tr. at 11 ("[Plaintiff's counsel] cited the opinion of Dr. Wallace . . . as material evidence to support their request for reopening of the [P]rior [D]ecision.")), and (2) consider Plaintiff's medical history to set a basis for considering Plaintiff's impairments during January 1, 2014 through March 31, 2014, the period of time immediately preceding Plaintiff's Prior Application, and during December 1, 2017 through April 29, 2020,

the period of time immediately following Plaintiff's Prior Application, (*see id.* at 11, 17, 20).

In fact, the Undersigned finds that the ALJ needed to summarize the evidence from the Prior Application at least briefly due to the unique chronology associated with Plaintiff's applications.  Accordingly, the Undersigned finds that the ALJ did not *de facto* reopen the Prior Application by reviewing the Prior Decision and the medical evidence considered in that determination.  *Passopulos*, 976 F.2d at 646 ("The ALJ . . . must be allowed some leeway to evaluate how newly presented evidence relates back to the prior application in order to determine whether to reopen the case."); *see also Carson v. Colvin*, No. 8:15-cv-751-T-33TGW, 2016 WL 3525288, at *5 (M.D. Fla. May 16, 2016) (finding that the ALJ did not *de facto* reopen the prior decision where he compared the evidence in the prior decision to the medical evidence in the immediate application), *report and recommendation adopted*, 2016 WL 3452934 (M.D. Fla. June 22, 2016); *Huebner v. Astrue*, No. 8:11-cv-00872-T-17, 2012 WL 3893565, at *5 (M.D. Fla. Aug. 20, 2012) (finding that an ALJ did not *de facto* reopen the prior application even though the ALJ "evaluated evidence from a period overlapping the Plaintiff's previous application for Title XVI benefits"), *report and recommendation adopted*, No. 8:10-cv-872-T-17, 2012 WL 3893542 (M.D. Fla. Sept. 7, 2012).

Similarly, as to Plaintiff's second argument – that the ALJ *de facto* reopened the Prior Application by finding that Plaintiff's past relevant work consisted of two

composite jobs,[3] rather than seven individual jobs[4] – the Undersigned is unpersuaded.  Plaintiff's argument necessarily implies that ALJ Johannes was required to apply administrative *res judicata* to the Prior Decision's finding on Plaintiff's past relevant work.  *See Passopulos*, 976 F.2d at 646 ("[T]he Secretary's final decision will be deemed reopened if the ALJ [(1)] does not apply *res judicata* and [(2)] bases an ultimate determination on a review of the record in the prior application."). For the reasons explained herein, the Undersigned finds that Plaintiff's argument fails to show that ALJ Johannes' decision *de facto* reopened the Prior Application.

Indeed, the Undersigned finds that ALJ Johannes did not *de facto* reopen the Prior Decision because (1) the dates primarily relevant to Plaintiff's instant applications are distinct from the dates primarily relevant to Plaintiff's Prior Application, (2) *res judicata* principles did not preclude the ALJ in this proceeding from finding a different past relevant work because the ALJ had access to a new record and new evidence in the form of the VE's hearing testimony, and (3) even if the ALJ erred by failing to apply *res judicata*, there is no indication in the record that ALJ Johannes' past relevant work determination was based on a review of the Prior Application's record.  Because ALJ Johannes did not have to apply *res judicata* to the

---

[3] In the instant decision, ALJ Johannes found Plaintiff's past relevant work consisted of composite jobs as (1) a test driver, new car inspector and (2) a lubrication technician, tire changer.  (Tr. at 21).

[4] In the Prior Decision, ALJ Anschuetz found Plaintiff's past relevant work consisted of work as a material handler, an order puller, a stock clerk, a tire repairer, a car inspector, a cart attendant, and a cleaner.  (Tr. at 84).

past relevant work determination and did not rely on any portion of the Prior Decision in arriving at his conclusions, the Undersigned finds that he did not re-evaluate, modify, or change any portion of the Prior Decision. *See Passopulos*, 976 F.2d at 646; *see also Duffy v. Comm'r of Soc. Sec.*, No. CV-19-08161-PCT-JAT, 2020 WL 1933923, at *3 (D. Ariz. Apr. 22, 2020). Accordingly, ALJ Johannes did not *de facto* reopen the Prior Decision. *Cherry,* 760 F.2d at 1189.

More particularly, Plaintiff's Prior Application alleged disability beginning on August 1, 2014. (Tr. at 79). Here, in both his DIB application and SSI application, Plaintiff alleges disability beginning on January 1, 2014. (*Id.* at 10). As discussed previously, the dates adjudicated in Plaintiff's Prior Application take place between the dates relevant to Plaintiff's present application. (*Compare* Tr. at 79, *with* Tr. at 10). Accordingly, ALJ Johannes was not determining Plaintiff's past relevant work such that he "reconsidered the merits" of ALJ Anschuetz's past relevant work finding because ALJ Johannes' finding related to applications on an entirely different time period. Of course, the Undersigned recognizes that a finding on an individual's past relevant work goes beyond an application's relevant dates as it relates to a period preceding the onset of disability, but the Eleventh Circuit has found that the doctrine of administrative *res judicata* does not apply when the factual time period for an application differs from the time period of the previous application. *Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1255 (11th Cir. 2003)); *see also* 20 C.F.R. § 416.1457(c)(1). In other words, because ALJ Johannes' past relevant work finding was issued in relation to a

decision on entirely different time periods, the Undersigned finds that administrative *res judicata* did not apply to preclude him from finding a different past relevant work than was found in the Prior Decision.  *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 844 (11th Cir. 2014) ("The ALJ properly declined to give the [prior] decision *res judicata* effect, as the ALJ's prior decision adjudicates a different time period.").

Relatedly, the Undersigned finds that administrative *res judicata* did not apply to preclude ALJ Johannes from finding a different past relevant work because his decision was made on a new record with new evidence in the form of the VE's hearing testimony.  (*See* Tr. at 21, 58-59); *see also Duffy*, 2020 WL 1933923, at *3 (finding that an ALJ had not improperly reconsidered the prior ALJ's findings where the ALJ had new, different testimony from a VE).  Here, not only is ALJ Johannes relying on different, new VE testimony, but the prior VE's testimony is not available in the record.  As a result, because ALJ Johannes' past relevant work finding is (1) based on new evidence not considered within the Prior Decision and (2) provided with respect to the adjudication of an entirely new time period, the Undersigned finds that administrative *res judicata* did not apply and the ALJ did not reconsider the merits of the Prior Decision.

Importantly, a *de facto* reopening requires an ALJ to "base[] an ultimate determination on a review of the record in the prior application."  *Passopulos*, 976 F.2d at 646.  Here, however, there is no indication in the record or in the decision that ALJ Johannes' past relevant work determination was based on "a review of the record in the prior application."  (*See* Tr. at 21, 58-59).  Thus, even if ALJ Johannes

had been required to apply administrative *res judicata* to ALJ Anschuetz's prior past relevant work finding, ALJ Johannes still did not *de facto* reopen the Prior Application because he did not base his past relevant work determination "on a review of the record in the prior application." *See Passopulos*, 976 F.2d at 646 (finding that a *de facto* opening occurs when an ALJ (1) fails to apply *res judicata* and (2) bases an ultimate determination on a review of the record in the prior application).

   While ALJ Johannes refers to certain portions of the Prior Decision, there is no indication that he considered the evidence that ALJ Anschuetz used to determine Plaintiff's past relevant work for the Prior Application. Ultimately, rather than reconsidering the Prior Decision, the ALJ merely undertook his obligation to examine the evidence of record before him, including the VE's new testimony, and issued a decision based exclusively on that evidence. *See, e.g.*, *Wolfe*, 86 F.3d at 1079 (finding that an ALJ's examination of the conflicting VE testimony from two prior hearings was appropriate and did not constitute a reopening of the prior decisions). Thus, the Undersigned finds that ALJ Johannes did not base an ultimate determination on a review of the record of the Prior Application. *See Cherry*, 760 F.2d at 1189; *see also Wolfe*, 86F.3d at 1079. In other words, ALJ Johannes did not *de facto* reopen the Prior Application by making a finding on Plaintiff's past relevant work.

   In sum, the Undersigned finds that Plaintiff has not shown that the ALJ *de facto* reopened the Prior Decision. As a result, the Court is without jurisdiction to

review the ALJ's decision not to reopen the Prior Decision.  *See* 42 U.S.C. § 405(g);

*Califano*, 430 U.S. at 107-09; *Passopulos*, 976 F.2d at 646.

Plaintiff's remaining contention as to this issue – that the ALJ committed

multiple errors in his evaluation of the evidence – presumes that the ALJ *de facto*

reopened Plaintiff's Prior Application.  Because the Undersigned finds that the ALJ

did not *de facto* reopen the Prior Application, Plaintiff's remaining argument is

rendered moot.  Thus, remand is not required as to this issue.

### D.   Whether the ALJ Failed to Properly Consider Plaintiff's Mental Impairments.

Plaintiff asserts that the ALJ erred by failing to properly consider Plaintiff's

mental limitations.  (*See* Doc. 23 at 24-30).  Specifically, Plaintiff argues that the ALJ

erred at step two of the sequential evaluation process by failing to properly perform

the "special technique" dictated by the Psychiatric Review Technique Form

("PRTF") when assessing the four broad areas of mental functioning.  (*Id.* at 24-27

(citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R.

§§ 404.1520a, 416.920a)).  Plaintiff also argues that the ALJ erred at step four and

step five when he "failed to include in the RFC and in hypothetical questions to the

VE, the limitations [he] found the Plaintiff has based on the technique."  (*Id.* at 27-

28).  Put differently, Plaintiff contends that the ALJ needed to include, or explain

why he failed to include, mental limitations in the RFC to account for the ALJ's step

two findings that Plaintiff had "mild" limitations in the areas of concentrating,

persisting, or maintaining pace and adapting or managing oneself.  (*Id.* at 27-30 (citations omitted)).

In response, the Commissioner contends that the ALJ did not err in his assessment of Plaintiff's mental impairments.  (*See id.* at 31-35).  To begin, the Commissioner asserts that the ALJ properly assessed and thoroughly discussed the medical evidence related to Plaintiff's medically determinable mental impairment. (*Id.* at 31-32 (citing Tr. at 14-15, 21, 542-46, 765-66)).  The Commissioner contends that this thorough assessment satisfied the ALJ's obligations regarding Plaintiff's mental impairments and the PRTF.  (*Id.* at 31-34 (citations omitted)).  As to the ALJ's findings at step two, the Commissioner concludes that the ALJ "thoroughly reviewed the relevant evidence and incorporated the PRT mode of analysis into his decision."  (*Id.* at 34).

Additionally, the Commissioner contends that the ALJ did not have to include the step two "mild" mental functioning limitations in the RFC because the limitations were an assessment of the severity of Plaintiff's mental impairments, not an assessment of Plaintiff's RFC limitations.  (*See id.*).  The Commissioner also asserts that the ALJ properly obtained VE testimony on Plaintiff's ability to do his past relevant work and that the ALJ did not have to include mental limitation findings in the hypothetical questions to the VE that the ALJ found unsupported by the record.  (*Id.* at 34-35 (citations omitted)).  In sum, the Commissioner contends that the ALJ's RFC determination was supported by substantial evidence and that he

did not err by omitting work-related mental functioning limitations from the RFC. (*See id.*).

Where a claimant has a "colorable claim of mental impairment," the ALJ must complete a Psychiatric Review Technique Form, ("PRTF"). *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). In completing the PRTF, the ALJ must evaluate how a claimant's mental impairment impacts four broad functional areas, (the "paragraph B criteria"): "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ will rate the degree of limitation in each of these areas using the following five-point scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ finds the degree of limitation in each of the functional areas as "none" or "mild," then the ALJ will generally conclude that the mental impairment is not severe and causes no more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at step two and step three of the sequential evaluation process for the purpose of determining whether mental impairments are severe. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The evaluation of the paragraph B criteria is not a determination of the claimant's mental residual functional capacity, as that determination "requires a more detailed assessment." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

A claimant's RFC reflects what the claimant can still do in a work setting despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3), 416.920(e), 416.945(a)(1), (3). Put differently, the ALJ must consider all of a claimant's medically determinable impairments, including those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Schink*, 935 F.3d at 1268. "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Schink*, 935 F.3d at 1268 (citing 20 C.F.R. § 404.1545(b)-(d)). If a claimant has a limited ability to carry out certain mental actions, such limitations may reduce a claimant's ability to do work. *Id.* "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.* at 1269 (citation omitted).

Here, the Undersigned is not persuaded that the ALJ erred in his assessment of Plaintiff's mental impairments. More particularly, the Undersigned finds that the ALJ (1) properly incorporated his PRTF findings into his decision and (2) rendered an RFC determination supported by substantial evidence, despite not including mental limitations.

At step two of the sequential evaluation, the ALJ found that Plaintiff's medically determinable mental impairment of depression was non-severe as it "does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (Tr. at 14).  In reaching this conclusion, the ALJ found "mild" limitations in two of the four paragraph B criteria – concentrating, persisting or maintaining pace and adapting or managing oneself – and "no limitation" in the two remaining paragraph B criteria – understanding, remembering, or applying information and interacting with others.  (*Id.* at 14-15).  Despite finding mild limitations at step two, the ALJ included no mental limitations in the RFC.  (*Id.* at 16).

Notwithstanding Plaintiff's assertions to the contrary, a review of the ALJ's decision shows that he properly completed a PRTF analysis and appropriately incorporated his findings into the decision.  (*See id.* at 14-21); *see also Trask v. Saul*, No. 8:20-cv-352-T-24SPF, 2021 WL 537177, at *3 (M.D. Fla. Jan. 21, 2021) (finding that the ALJ properly engaged in the analysis required by the PRTF and Social Security regulations), *report and recommendation adopted*, 2021 WL 535403 (M.D. Fla. Feb. 12, 2021).

Specifically, immediately prior to finding that Plaintiff exhibited "no limitation" in the paragraph B criteria for understanding, remembering, or applying information and interacting with others, the ALJ first assessed Dr. Wong's February 17, 2020 Summary Note.  (Tr. at 14 (citing Tr. at 765-66)).  As discussed by the ALJ, Dr. Wong found that Plaintiff "is experiencing debilitating depressive and anxious

symptoms which noticeably impeded his functioning in all areas of his life," but also noted that "[Plaintiff's] ability to complete work-related mental activities is adequate." (*Id.* (citing Tr. at 765)).  The ALJ also considered that Dr. Wong made her findings and assessments after only treating Plaintiff four times in January 2020 and February 2020.  (*Id.*).  Finally, as to Dr. Wong's Summary Note, the ALJ found the opinion unpersuasive because of (1) the short duration of Dr. Wong's treatment relationship with Plaintiff, (2) the fact that Dr. Wong's opinion appeared to be largely based on Plaintiff's subjective statements, (3) Dr. Wong's statement that Plaintiff's limitations are based on his physical impairments despite that Plaintiff's physical impairments are outside of Dr. Wong's area of expertise, (4) Dr. Wong's findings of "extreme" and "marked" limitations, which were without support, and (5) "Dr. Wong's statements regarding [Plaintiff's] severe mental health limitations [that were] not consistent with treatment notes of multiple other providers, . . . which showed normal/adequate mental status examinations during office visits." (*Id.* at 19, 21 (citing Tr. at 765-66)).

Next, the ALJ summarized and considered Dr. Lopez's October 11, 2018 Psychological Evaluation.  (*Id.* at 14 (citing Tr. at 542-46)).  The ALJ noted that Dr. Lopez conducted a Folstein Mini Mental Stats Evaluation to formally assess Plaintiff's mental status and found that Plaintiff obtained a score of "30/30."  The ALJ also considered that Dr. Lopez found Plaintiff exhibited (1) "adequate sustained concentration," (2) intact processing speed, (3) "adequate social interactions," (4) "adequate expressive language," (5) "intact persistence, ability to pay attention, learn

and recall information," and (6) the "ability to carry out all basic and instrumental activities of daily living."  (*Id.* (citing Tr. at 545-46)).  Additionally, the ALJ found Dr. Lopez's October 11, 2018 statement persuasive such that it was consistent with and supported by the medical evidence of record showing that Plaintiff's mental status was adequate or within normal limits.  (*Id.* at 21 (citing Tr. at 542-46)).

Following this analysis of the medical evidence related to Plaintiff's mental impairments, the ALJ found that Plaintiff exhibited "no limitation" in the paragraph B criteria for understanding, remembering, or applying information and interacting with others.  Because the ALJ thoroughly discussed medical evidence directly related to these two paragraph B criteria, the Undersigned finds that the ALJ's decision on these two areas of broad mental functioning is supported by substantial evidence.  *See Bianco v. Comm'r of Soc. Sec.*, No. 2:18-cv-570-FtM-NPM, 2019 WL 4727812, at *5 (M.D. Fla. Sept. 27, 2019) ("Even though the ALJ did not specifically reference the PRTF, he did rate Plaintiff's limitations in all areas, discussed the medical evidence that addressed these areas, and considered the psychological consultant's findings. Accordingly, the Court finds that the ALJ properly incorporated the PRTF analysis in his decision and the ALJ's decision as to this issue is supported by substantial evidence.").

To the extent that the ALJ found that Plaintiff exhibited "mild" limitations in the areas of concentrating, persisting or maintaining pace and adapting or managing oneself, the Undersigned finds that the ALJ's decision is supported by substantial evidence in light of the same thorough consideration of the medical evidence related

to Plaintiff's mental impairments.  (*See* Tr. at 14-15 (citing Tr. at 542-46, 765-66)).

Moreover, the ALJ's findings on the areas of concentrating, persisting or maintaining

pace and adapting or managing oneself are bolstered by the ALJ's consideration of

Plaintiff's own statements about his activities of daily living.  (*Id.* (citing Tr. at 287-

91, 305-08, 311-18)).

The Undersigned is not persuaded by Plaintiff's arguments that the ALJ failed

to consider the medical evidence or exclusively relied on "lay statements" in arriving

at his step two paragraph B findings.  (*See* Doc. 23 at 25-26).  Rather, as discussed

above, the ALJ considered Dr. Wong's medical records, Dr. Lopez's medical

records, and Plaintiff's own statements related to his mental impairments and

activities of daily living.  Accordingly, the Undersigned finds that the ALJ properly

addressed Plaintiff's limitations in the four broad areas of mental functioning in

accordance with the PRTF.  *See Taviere v. Comm'r of Soc. Sec.*, No. 8:18-cv-1182-T-

JSS, 2019 WL 4164961, at *4 (M.D. Fla. Sept. 3, 2019) ("Because the ALJ properly

utilized the mode of analysis required by the PRTF and the Social Security

regulations, [the p]laintiff has not shown error.").

Plaintiff next argues that the ALJ's failure to include mental functional

limitations in the RFC constituted error as the "mild" limitations in two of the

paragraph B criteria required the ALJ to include mental limitations in the RFC.  (*See*

Doc. 23 at 27-30).  The Undersigned disagrees.  Rather, it appears that Plaintiff

conflates (1) limitations in the paragraph B criteria, *see* 20 C.F.R. §§ 404.1520a,

416.920a, with (2) limitations in a claimant's RFC, *see* 20 C.F.R. §§ 404.1545,

416.945.  The limitations in the paragraph B criteria help the ALJ determine the severity of a claimant's mental impairments or whether a claimant meets a listing, while limitations in the RFC help the ALJ determine the level of work that a claimant is capable of performing.  *Compare* 20 C.F.R. §§ 404.1520a, 416.920a, *with* 20 C.F.R. §§ 404.1545, 416.945.  Plaintiff has provided no authority finding that the two are the same or that an ALJ is required to include mental limitations in the RFC on finding "mild" limitations in the paragraph B criteria.

To the contrary, the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find "mild" limitations while completing a PRTF.  *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations in the paragraph B criteria); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas[, but] did not err in failing to include

36

[functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179 (M.D. Fla. Mar. 25, 2021).

Plaintiff also identified no relevant evidence that he contends the ALJ failed to address in the RFC determination.  (*See* Doc. 23 at 27-30).  Thus, Plaintiff fails to meet his burden to prove that his mental impairments, whether severe or not severe, would have caused additional limitations in his ability to work or prevented him from performing his past relevant work.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Moreover, upon a review of the ALJ's decision, the Undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's mental health impairments did not cause any work-related RFC limitations.  For example, as discussed above, the ALJ considered Dr. Wong's and Dr. Lopez's medical findings related to Plaintiff's mental impairments.  (*See* Tr. at 14, 19-21 (citing Tr. at 542-46, 765-66)).  Additionally, during the RFC assessment, the ALJ thoroughly considered Plaintiff's own testimony related to his mental impairments but found Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms" inconsistent with the medical evidence of record.  (*See id.* at 14-19 (citing Tr. at 39-75,

287-91, 305-08, 311-18)).  The ALJ also considered and discussed the state agency medical consultants' statements, (*see id.* at 20 (citing Tr. at 96-98, 105-07, 120-24, 135-38)), and Dr. Wallace's findings, (*see id.* at 18-19 (citing Tr. at 601-02, 761-64)), related to Plaintiff's mental impairments.

Accordingly, upon an independent review of the record and citations provided by the ALJ, the Undersigned finds that the ALJ appropriately addressed all the evidence related to Plaintiff's mental impairments.  (*See id.* at 14-21 (citing Tr. at 39-75, 96-98, 105-07, 120-24, 135-38, 287-91, 305-08, 311-18, 542-46, 601-02, 761-66)).  Because the ALJ properly determined the severity of Plaintiff's mental impairments, considered the paragraph B criteria at step two, and assessed the medical evidence of record related to Plaintiff's mental conditions and his ability to perform work related activities, the ALJ's decision is supported by substantial evidence.  Thus, the Undersigned finds that the ALJ did not err in determining Plaintiff's RFC.  It follows then that the ALJ did not have to include limitations he found not credible in his hypothetical questions to the VE.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004) (finding that the ALJ need not include findings in his hypothetical questions that he rejected as unsupported).

Accordingly, the Undersigned recommends that the ALJ's decision be affirmed as to this issue.  *See Trask*, 2021 WL 537177, at *4-6 (finding that the ALJ properly considered a plaintiff's mental impairments and addressed the appropriate limitations in the RFC and in the hypothetical questions to the VE), *report and recommendation adopted*, 2021 WL 535403.

E.     **Whether Plaintiff Is Entitled to an Award of Benefits.**

As stated above, the Undersigned finds that the Commissioner's decision is due to be affirmed.  Nevertheless, the Undersigned analyzes Plaintiff's request that the Court remand his case with instructions for an immediate award of benefits, (*see* Doc. 23 at 53-54), in the event that the presiding United States District Judge disagrees with the Undersigned's findings and recommendations above.

Plaintiff requests that the Court remand his case with instructions for an immediate award of benefits.  (*See id.*).

"Generally, the proper remedy for errors in a disability decision is a remand for further proceedings, but the Commissioner does not enjoy endless opportunities to get it right." *Green v. Comm'r of Soc. Sec.*, No. 6:18-cv-1095-Orl-41GJK, 2019 WL 2210689, at *2 (M.D. Fla. Feb. 20, 2019) (quotation omitted), *report and recommendation adopted*, 2019 WL 1745372 (M.D. Fla. Apr. 18, 2019).  Thus, while rare, the Court may remand a social security disability case for an award of benefits where (1) the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt," *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (citation omitted), or (2) the claimant has suffered an injustice, *see Green*, 2019 WL 2210689, at *2 (citing *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982)), *report and recommendation adopted*, 2019 WL 1745372.  In considering whether a plaintiff has suffered an injustice, courts in this District have remanded for an award of benefits "where there

have been repeated remands, a failure to follow remand instructions, the Commissioner's inability to carry its burden of proof, the existence of extraordinary delay, or a combination of these factors." *Id.* (quotation and citations omitted).

Here, the Undersigned finds that Plaintiff's request for a remand for an immediate award of benefits is due to be denied for two reasons. First, Plaintiff has failed to sufficiently support or put forward any argument for a remand with an immediate award of benefits. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (finding that a plaintiff's perfunctory argument was abandoned). Second, upon an independent review of the record, the Undersigned finds that (a) the cumulative effect of the evidence does not establish disability without any doubt and (b) there is no evidence of injustice in Plaintiff's case.

Accordingly, the Undersigned recommends that if Plaintiff's case is remanded, it be remanded for further administrative proceedings, rather than for an immediate award of benefits.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.      The decision of the Commissioner be **AFFIRMED** pursuant to

sentence four of 42 U.S.C. § 405(g).

2.      The Clerk of Court be directed to enter judgment accordingly, to

terminate any pending motions and deadlines, and to close the case.

   **RESPECTFULLY RECOMMENDED** in Chambers in Tampa, Florida on

August 11, 2022.

_____
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

   A party has fourteen days from this date to file written objections to the

Report and Recommendation's factual findings and legal conclusions.  A party's

failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties